IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACQUELINE STEPHANIE ROYBAL,

        Plaintiff,

v.

                                              CIV 13-0910 JB/KBM

SOCIAL SECURITY ADMINISTRATION,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (*Doc. 26*) which was fully briefed May 29, 2014. Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 6*. Having carefully reviewed the parties' submissions and the administrative record, the Court recommends that Plaintiff's motion to remand be granted.

**I.    Background and Procedural History**

Plaintiff was born in 1987 and graduated from high school as a special education student. AR 54, 274.[1] Plaintiff has two young children, lives with her grandmother and takes classes at Santa Fe Community College. AR 34-35, 37. Plaintiff has prior employment as a cashier, teacher assistant, caregiver, server, and work-study computer lab worker. AR 24, 185-86, 200, 213. Unfortunately, she also has a history of

---

[1] Documents 22-1 through 22-21 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

substance abuse and legal trouble as a teenager. AR 564.

Plaintiff applied for disability insurance benefits and social security income on March 18, 2010, alleging disability since February 29, 2008, due to seizures caused by a traumatic brain injury ("TBI") she suffered when she was eight-years-old, a learning disability, headaches, anxiety, and memory problems. AR 144-151, 192-198. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing before an administrative law judge ("ALJ"), which took place before ALJ Ann Farris on April 3, 2012. AR 27, 71-76, 94-95.

The ALJ issued her decision on June 20, 2012. AR 15-26. Utilizing the five-step sequential evaluation process[2], the ALJ found: at Step One, Plaintiff was not engaged in substantial gainful activity; at Step Two, Plaintiff had severe impairments including a cognitive disorder, status post-traumatic brain injury, a seizure disorder and substance abuse (AR 20); at Step Three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments; at Step Four, Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with some nonexertional limitations, but that she was unable to perform

---

[2] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 D.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If the claimant does not meet a listing, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step-Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

past relevant work; and at Step Five, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. AR 25-26. Plaintiff's request that the Appeals Council review the unfavorable decision was denied leaving the ALJ's decision as the final decision of the Commissioner. AR 1-5.

## II.     The Claims

Plaintiff raises four arguments on appeal: 1) the ALJ failed to consider the impairments of Post-traumatic Stress Disorder ("PTSD"), mood disorder NOS (not otherwise specified) or TBI-related mood disorder, pain disorder NOS, post-concussion syndrome with headaches and dizziness, and neck strain; 2) the ALJ failed to properly evaluate the treating and examining medical and psychological source opinions; 3) the ALJ erred in not allowing Plaintiff to cross-examine the vocational expert as to Dr. Cox's opinion; and 4) the ALJ's credibility finding was not supported by substantial evidence.

## III.    Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (brackets in original).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner.  *Id.* at 1214.

## IV.     Discussion

The Court recommends that this case be remanded for further consideration because it is unclear whether the ALJ applied the correct legal standard when evaluating the medical source opinions of Plaintiff's treating physicians and will address that issue first.

### A.     **The ALJ Failed to Properly Evaluate the Medical Source Opinions of Plaintiff's Treating and Evaluating Physicians.**

Treating and examining physicians may offer an opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as her work-related physical and mental limitations.  *Castellano v. Secretary of Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994).  Pursuant to the so-called "treating physician rule," the Commissioner will give more weight to the opinions of treating medical sources than those from non-treating sources."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  The Commissioner will also generally give greater weight to the opinion of an examining physician than to one who has not examined the claimant.  20 C.F.R. § 416.927(c)(1); 20 C.F.R. § 404.1527(c)(1).

When presented with a treating medical source opinion, the ALJ must first

determine whether the opinion is entitled to "controlling weight,"[3] and if not, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."[4]  *Langley*, 373 F.3d at 1119 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  While the ALJ is not required to discuss each factor, "'an ALJ must give good reasons for the weight assigned to a treating physician's opinion' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources' medical opinion and the reasons for that weight.'"  *Id.*  (quoting *Watkins,* 350 F.3d at 1301).  Similarly, an ALJ must give specific, legitimate reasons for completely rejecting a medical source opinion.  *Id.*  While an examining physician's opinion is not entitled to the deference of a treating physician's opinion, the ALJ is still required to consider an examining physician's opinion and provide specific, legitimate reasons for rejecting it.  *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted).

---

[3] To determine if a medical source opinion is entitled to "controlling weight," the ALJ

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no" then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Langley*, 373 F.3d at 1119 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

[4] Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1301).

> In her decision, ALJ Farris states:
>
> As for the opinion evidence, I have considered[,] evaluated, analyzed, and weighed all the opinion evidence, conflicting or otherwise, and regardless of its nature and source (consultative, treating, or state medical experts), in accordance with the requirements of 20 CFR 404.1527 and Social Security Ruling 96-2p, 96-6.  All the opinions, conclusions were accorded the weight merited by the overall evidence from each source, in conjunction with the total evidence in the case and other relevant factors as provided in the regulations (20 CFR 404.1527(e); Social Security Ruling 96-5p: 20 CFR 1527(D).

AR 24.  This general statement does not identify with specificity the weight the adjudicator gave to each treating source opinion and the reasons for that weight.

Plaintiff complains that the ALJ did not properly consider the opinions of her treating physician, Dr. Reininga, who opined that Plaintiff was "100% disabled" (AR 674), or that of examining physician, Dr. Koltuska-Haskin, who was of the opinion that Plaintiff would have "a great deal of difficulty finding and keeping a full-time job and should be placed on disability" (AR 572).  The ALJ gave Dr. Reininga's opinion "little weight," explaining that "[Dr. Reininga] is not a vocational expert, and the issue of disability is reserved to the commissioner."  AR 24.  The ALJ did not discuss Dr. Koltuska-Haskin's opinion in her decision.

The ultimate determination of whether a claimant is disabled, however, lies with the Commissioner.  *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (holding that the doctor's opinion on whether the claimant could return to work was an issue for the Commissioner); *see also* 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).  In her decision, the ALJ gave this specific, legitimate reason for giving "little weight" to Dr. Reininga's opinion.  AR 24.  Thus, the ALJ's failure to give more significant weight to Dr. Koltuska-Haskin's opinion was appropriately discounted on the issue reserved to

the commissioner. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-734 (10th Cir. 2005) (a finding of harmless error is appropriate "where based on material the ALJ did at least consider (just not properly) we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

On the other hand, Plaintiff's treating physicians, Dr. Johnson and Dr. Baten, both offered opinions on Plaintiff's physical and mental abilities. Dr. Johnson, Plaintiff's treating psychiatrist, found several of Plaintiff's work-related mental abilities "seriously limited" due to her traumatic brain injury. AR 668-69. Treating physician Baten opined that pain and other symptoms would interfere with Plaintiff's attention and concentration on a frequent basis and concluded that Plaintiff is "[i]ncapable of even 'low stress' jobs" due to pain. AR 629-32. Both agreed that Plaintiff is likely to be absent from work more than four days per month due to her impairments. AR 632, 669.

Yet the ALJ did not discuss at all her reasons for rejecting Dr. Baten's opinions, and she gave "little weight" to Dr. Johnson's opinion solely because of the psychiatrist's letter indicating that a recent car accident had worsened Plaintiff's conditions. ALJ Farris stated that the recent exacerbation "does not meet the durational requirement." AR 24. But this finding ignores Dr. Johnson's earlier "pre-exacerbation" observations about significant long-term limitations Plaintiff would experience in the working environment. AR 668-69. Therefore, I recommend remand to allow the ALJ to determine whether the medical opinions of Plaintiff's treating physicians are entitled to controlling weight and, if not, to provide with greater detail the reasons for the weight she ultimately affords those treating physician opinions.

### B. The ALJ's Credibility Finding was Affirmatively Linked to Substantial Evidence.

An RFC determination must be based on the entire record, including the credibility of the plaintiff's subjective complaints. *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citing 20 C.F.R. §§ 416.929, 416.945). Indeed, "the ALJ's credibility and RFC determinations are inherently intertwined." *Id*. at 1171. Courts generally defer to the ALJ's credibility findings because "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168 (2005) (internal quotation and citation omitted). However, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (internal quotation and citation omitted). While the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence," the ALJ must set forth the specific evidence relied upon in evaluating the claimant's credibility. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (internal citation and quotations omitted).

In her decision, the ALJ explains that Plaintiff's medical records show a history of "generalized absence seizures," that were brief, non-convulsive, and appeared to completely vanish even when Plaintiff was not taking medications. AR 23-24. The ALJ also notes that Plaintiff was cleared to resume driving, that the seizures were well controlled with medications, and that there were no functional limitations due to seizures. *Id.* Similarly, there was no indication that Plaintiff's headaches interfered with her activities of daily living. *Id.* The ALJ then concludes:

**8**

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments might be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 24.

Although the ALJ uses "boilerplate" language to describe the result of her credibility assessment, she first discusses the specific evidence upon which she relies for her credibility evaluation. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."). Examination of the record as a whole demonstrates that the ALJ's credibility finding is closely and affirmatively linked to substantial evidence.

### C. The ALJ Considered All of Plaintiff's Impairments at Step Three.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (internal citation and quotation omitted). If the ALJ finds that the claimant does not meet a listed impairment, she is "required to discuss the evidence and explain why [she] found that [the claimant] was not disabled at step three." *Id.* The ALJ need not discuss every bit of evidence, but "[t]he record must

demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-1010; *see also Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less.").

Although the ALJ states in her decision that she considered the evidence in the record (AR 21, 22), Plaintiff complains that the ALJ did not consider her pain disorder NOS, mood disorder NOS, PTSD, post-concussion syndrome with headaches and dizziness, or cervical strain. *Doc. 27* at 18-19. The general practice in the Tenth Circuit, "is to take a lower tribunal at its word when it declares that it has considered a matter," *Hackett v. Barnhart*, 395, F.3d 1168, 1173 (2005). Here, it is not necessary to merely take the ALJ at her word, because her analysis of the "paragraph B" criteria demonstrates her consideration.

Plaintiff concedes that TBI-related mood disorder and post-concussion syndrome are evaluated under Listing 12.02 ("Organic mental disorders"), that mood disorder is evaluated under Listing 12.04 ("Affective Disorders"), that PTSD is evaluated under Listing 12.06 ("Anxiety related disorders"), and that pain disorder is evaluated under Listing 12.07 ("Somatoform disorders"). *Doc. 27* at 18, n.6-8; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A. Listings 12.02, 12.04, 12.06 and 12.07 all share the same "paragraph B" requirements.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00. The ALJ analyzed the "paragraph B" criteria applicable to each of Plaintiff's mental impairments and found that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listings 12.02, 12.04, 12.06 and 12.07." AR 21. It

---

[5] "Paragraph B" requirements include: marked restrictions of activities of daily living; marked difficulties in maintain social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration.

**10**

is clear the ALJ adequately considered Plaintiff's mental impairments.

Plaintiff also argues that the ALJ failed to consider her neck strain for which there is no Listing. When a claimant alleges an unlisted impairment, she must show that the unlisted impairment, or combination of impairments, is equivalent to a listed impairment by presenting medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citing 10 20 CFR § 416.926(a) (1989); SSR 83–19, at 91). Plaintiff has not made any such showing in this case. Further, when assessing Plaintiff's RFC, the ALJ noted that MRIs and CT scans of Plaintiff's cervical spine were normal. AR at 23, 634. Therefore, there is no medical evidence that the cervical strain caused a severe impairment. *See Larson v. Chater*, 103 F.3d 144 (10th Cir. 1996) (Step Three determinations are based solely on medical evidence). It was, therefore, harmless for the ALJ to not specifically discuss the cervical strain in her Step Three analysis. *See Fischer-Ross*, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). Thus, the record demonstrates that the ALJ considered Plaintiff's various impairments and did not err at Step Three.[6]

### D. The ALJ Did Not Violate Plaintiff's Due Process Rights by Limiting the Cross-Examination of the Vocational Expert.

"The fundamental requirement of due process is the opportunity to be heard 'at

---

[6] In her reply, Plaintiff argues that the ALJ failed to properly discuss Dr. William's diagnoses at Step Three. *Doc. 29* at 2-3. Dr. Williams diagnosed Plaintiff with cognitive disorder, TBI, which is analyzed under Listing 12.02, and major depressive disorder NOS, which is analyzed under Listing 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 ("Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.") Both of these impairments were analyzed by the ALJ, as discussed above.

a meaningful time and in a meaningful manner.'" *Gordon v. Astrue*, 249 F. App'x 810, 813 (10th Cir.2007) (unpublished) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Disability applicants "must be afforded procedural due process protections in the hearing setting," *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994), and "[c]laimants have the right to cross examine vocational experts as a part of procedural due process." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). However, "the role of cross-examination in disability proceedings should remain limited." *Id*. "Similarly, 'the conduct of the hearing rests generally in the examiner's discretion.'" *Galdean v. Barnhart*, 46 F. App'x 920, 923 (10th Cir. 2002) (unpublished) (quoting *Richardson v Perales*, 402 U.S. 389, 400, 91 S. Ct. 1420 (1971)).

At the hearing, the ALJ permitted Plaintiff's counsel to cross-examine the vocational expert but limited the questioning with regard to the opinions of Dr. Cox, a reviewing state psychologist. AR 62-68. Plaintiff's counsel sought to ask questions regarding certain functional limitations on pages one and two of Dr. Cox's report. AR 63-64. Those pages contain a checklist in which the limitation of each function is rated from "Not Significantly Limited" to "Markedly Limited." AR 544-45. For example, as to Plaintiff's "ability to carry out detailed instructions," Dr. Cox assessed her as having "Markedly Limited" difficulties. AR 544.

The ALJ explained, "Those are checkboxes that are used in conjunction with the assessment, but the [ ] actual functional assessment is in section three," (AR 64), and she did not allow the ALJ to question the vocational expert about specific limitations. AR 64-65. Plaintiff argues this was a violation of her due process rights. The Court disagrees.

The Commissioner cites to provisions from the Hearings, Appeals and Litigation Law Manual (HALLEX), an internal Social Security Administration manual, which provides guidance to the Commissioner with regard to the role of the vocational expert. The HALLEX instructs:

> The ALJ will not permit the [vocational expert ("VE")] to respond to questions on medical matters or draw conclusions not within the VE's authority, e.g. the VE may not provide opinions regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.

HALLEX 1-2-6-74(C). Courts in other circuits have found that a vocational expert exceeds the scope of her expertise where she gives testimony based solely on a list of impairments, because a vocational expert is not a medical doctor and cannot make medical judgments. *See Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (unpublished); *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987); *Cook v. Heckler,* 739 F.2d 396, 399 (8th Cir. 1984); *see also Mont v. Chater*, 114 F.3d 1191, *11 (7th Cir. 1997) (unpublished) (finding it was proper for the ALJ to interrupt and limit the scope of attorney's questions when they went beyond how the functional limitations would impact jobs or the number of jobs that were available). This view is consistent with Tenth Circuit opinions holding that "a vocational expert may be called for the limited purpose of determining whether the claimant's skills acquired during past work would transfer to a category containing the exertional level the administrative law judge has concluded the claimant could perform." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citing *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987)).

The Court finds that ALJ properly prohibited Plaintiff's counsel from questioning the vocational expert on specific functional limitations noted by Dr. Cox. Those limitations were distilled into Dr. Cox's conclusion of Plaintiff's functional capacity assessment on page three of his report, (AR 546), and presumably considered by the ALJ in determining the severity of Plaintiff's impairments at Step Three and in formulating her final RFC at Step Four.[7] Essentially, counsel was asking the vocational expert to redefine the RFC based on one physician's opinion of Plaintiff's specific functional limitations, which is not the vocational expert's role. Rather, the vocational expert is available to assist the ALJ in determining whether a claimant can perform past work and whether there are jobs in the national economy given the RFC previously determined by the ALJ. Accordingly, it was not a violation of Plaintiff's due process rights for the ALJ to restrict counsel's questions to those within the scope of the vocational expert's limited purpose.

## V. Conclusion

Although the ALJ did not error in her credibility assessment, at Step Three, or in limiting the cross-examination of the vocational expert, I still recommend remand because the record does not demonstrate that the ALJ sufficiently identified the correct legal standard when evaluating the medical source opinions of Plaintiff's treating physicians Johnson and Baten nor her reasons for discounting those opinions.

Wherefore,

---

[7] Plaintiff does not specifically argue that the ALJ failed to properly consider Dr. Cox's opinions but does mention that "[s]he did not mention Dr. Cox's report." Doc. 27 at 18. If the presiding judge agrees that remand is appropriate, the ALJ will have the opportunity to once again consider and weigh all of the medical source opinions.

**14**

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand *(Doc. 26)* be granted.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE